DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas, in which the trial court granted a motion for summary judgment filed by appellees, Board of Park Commissioners, Erie Metroparks and Wheeling and Lake Erie Railroad Co., and dismissed the quiet title action filed by appellants, Jerry and Carole Nottke. On appeal, appellants set forth the following four assignments of error:
 {¶ 2} "I. The trial court erred when it granted defendants-appellees' motion for summary judgment because defendants-appellees cannot claim title to the subject property through adverse possession.
 {¶ 3} "II. The trial court erred when it granted defendants-appellees' motion for summary judgment where the railroad abandoned the subject property by ceasing all railroad operations and the railroad operated on property owned by plaintiffs-appellants with written permissive license only.
 {¶ 4} "III. The trial court erred when it failed to grant plaintiffs-appellants' motion for summary judgment when all experts were in complete agreement that the disputed property lay within plaintiffs-appellants' property as defined in their chain of title.
 {¶ 5} "IV. The trial court erred when it failed to grant plaintiffs-appellants' motion for summary judgment when defendants-appellees failed to show ownership in the subject property by virtue of adverse possession having entered the subject property only by written permissive license."
 {¶ 6} Appellants are the current owners of an undivided one-half interest in a 14.773 acre parcel ("parcel") of land in Erie County, Ohio. Ownership of the other undivided one-half interest in the parcel is shared by Jerry Nottke's cousins, Larry and Gilbert
 {¶ 7} Hoffman, and their respective spouses. With the exception of 2.517 acres that were split off from the parcel sometime after 1914,[1] the legal description has remained unchanged since the original owner, Aaron Meeker, transferred the parcel to George Shafer in 1882. The legal description at that time, which set out the boundaries of the parcel included, as one of its boundary markers, a "stake in the line of Wheeling and Lake Erie R.R. Co. land * * *."
 {¶ 8} On December 2, 1882, a document was recorded in Erie County that purported to be an agreement between George Shafer and the Wheeling and Lake Erie Railroad Company. In the agreement, Shafer stated that he would allow the railroad to install and operate a line through "the farm on which I now reside," contingent on the future purchase of the right-of-way for an undetermined price ("Shafer-railroad agreement").
 {¶ 9} All parties agree that the Meeker-Shafer deed refers to the Wheeling and Lake Erie Railroad Company, which installed a railroad line over approximately a .5 acre portion of the parcel sometime after 1882. The Railroad Company
 {¶ 10} eventually became what is now appellee, Wheeling and Lake Erie Railway Company ("Wheeling"), and Norfolk Southern Corporation[2]. Those entities continued to operate a railroad over the parcel until the mid-1980s. However, in 1988, Wheeling filed an abandonment of service application with the Interstate Commerce Commission. Thereafter, some of the railroad ties and ballast were removed, and other portions of the line fell into disuse.
 {¶ 11} Appellants and the Hoffmans acquired joint possession of the entire 14.773 acre parcel in 1986 when it was transferred to them by their respective mothers, Audrey Nottke and Earla Hoffman. In 1987 and 1988, the Nottkes and the Hoffmans entered into a series of land transfers, through which they attempted to divide ownership of the parcel between themselves. However, in 1990, Wheeling and Norfolk Southern conveyed a .5 acre right-of-way to appellee, Erie Metroparks, by way of a quit-claim deed ("disputed area"). Sometime thereafter, Erie Metroparks began preparing a right-ofway through the disputed area for use as a public-access park and bicycle path. When appellants became aware that Erie Metroparks wanted to develop the old railroad line into a public-access park and bicycle trail, they refused to complete the split of ownership by surrendering their undivided one-half interest in the parcel.
 {¶ 12} On August 16, 2002, appellants filed a complaint to quiet title, in which they asked the trial court to declare them the owners of the parcel in fee simple.[3] Wheeling and Norfolk Southern answered the complaint on September 19, 2002. That same day, Erie Metroparks filed an answer and a counterclaim, in which it asserted an interest in the disputed portion of the parcel by virtue of the Wheeling quit claim deed or, alternatively, through adverse possession.
 {¶ 13} On May 13, 2003, Erie Metroparks filed a motion for summary judgment and a memorandum in support thereof, in which it asserted that none of the deeds in appellants' chain of title includes a description of the disputed area. Alternatively, Erie Metroparks claimed it has a prescriptive easement, because the railroad line was operated across land claimed by appellants and their predecessors for over 21 years.
 {¶ 14} Attached to Erie Metroparks' memorandum were the affidavits of surveyor Thomas A. Simon and Midland Title Company manager Nancy A. Haley. Simon stated in his affidavit that, in his professional opinion, none of the legal descriptions in the deeds that form appellants' chain of title include the disputed area. Haley stated in her affidavit that, after examining all the documents in appellants' chain of title, it was her opinion that "the property owned by Wheeling Lake Erie Railroad Company served as one of the boundaries of the premises conveyed by such instruments."
 {¶ 15} Appellants filed a memorandum in opposition to Erie Metroparks' summary judgment motion on July 31, 2003. In addition, appellants filed a cross-motion for summary judgment on August 15, 2003, in which it argued that the disputed area is included in all the deeds in appellants' chain of title. Appellants further argued that the doctrine of adverse possession does not apply in this case, since Wheeling's predecessor initially obtained permission from George Shafer to operate a railroad across the parcel.
 {¶ 16} Attached to appellants' memorandum was the affidavit of William D. Kalfs, president of Tucker Abstract and Title Company, Inc. Kalfs stated in his affidavit that, after reviewing maps of the disputed property and comparing them to the legal description set forth in appellants' deed, the reference "to a stake in the line of the Wheeling and Lake Erie Railroad Company's line"[4] refers to "a radical jog of the property line which generally runs along the western side of the railroad hashmarkings." Kalfs concluded, based on the above opinion, and after reviewing all the documents in appellants' chain of title, that the Shafer-Wheeling agreement was in appellants' chain of title, and that the right-of-way referenced in the agreement was located on appellants' parcel.
 {¶ 17} In addition to Kalf's affidavit, appellants supported their cross-motion for summary judgment with Thomas Simon's deposition testimony, taken on June 24, 2003, in which, after initially stating that appellants' parcel did not include the disputed area, Simon admitted that the reference in the Meeker-Shafer deed to a stake in the line of the railroad's land would be more consistent with the Shafer-railroad agreement if it encompassed the railroad's right-of-way. Simon based this last conclusion on his review of an 1896 map that showed the northwest boundary of appellants' parcel crossing over to the other side of the railroad line. Simon further stated that the Shafer-railroad agreement was in appellants' chain of title, and the parcel defined in the Meeker-Shafer deed was the same parcel in which appellants had an undivided one-half interest.
 {¶ 18} Appellants also relied on Nancy Haley's deposition testimony, taken on June 24, 2003, in which Haley stated that she did not know whether George Shafer owned any property other than the 17.29 acre parcel in 1882; however, she believed the Shafer-railroad agreement referenced appellants' parcel. Haley further testified that, in er opinion, the parcel boundary marked by a "stake in the line" of the railroad's land could have either abutted the railroad's right-of-way or encompassed it.
 {¶ 19} Also attached to appellants' cross-motion for summary judgment was the deposition of Jerry Nottke, taken on January 29, 2003. Nottke testified in his deposition that he believed the parcel he inherited from his mother always included the disputed area. Attached to Nottke's deposition was a diagram of the entire parcel, on which Nottke outlined in red the area he believed to be transferred to him in the last Nottke deed, which included a portion of the disputed area.
 {¶ 20} On April 23, 2004, the trial court granted Erie Metroparks' motion for summary judgment, denied appellants' cross-motion for summary judgment, and declared Erie Metroparks to be "the owner of the disputed property in fee simple." Appellants filed a timely notice of appeal on May 21, 2004.
 {¶ 21} We note initially that an appellate court reviews a trial court's granting of summary judgment de novo, applying the same standard used by the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129; Village of Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C). Initially, the party seeking summary judgment bears the burden of informing the trial court of the basis for the motion and identifying portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293.
 {¶ 22} The underlying action in this case was brought by appellants to quiet title to the entire parcel by determining ownership of the disputed area. Accordingly, we will first address appellants' third assignment of error, in which they assert that the trial court erred when it summarily found that appellees were the owners of the disputed area in fee simple.
 {¶ 23} Generally, in an action to quiet title, the burden of proof "`rests with the complainant as to all issues which arise upon essential allegations of his complaint. He must prove title in himself if the answer denies his title or if the defendant claims title adversely.'"Waldock v. Unknown Heirs, 6th Dist. No. E-89-53, quoting 65 American Jurisprudence 2d (1972) 207, Quieting Title, Section 78. Conversely, "`[t]he burden rests upon the defendant to establish a title which he has set up to defeat the complainant's claim of ownership.'" Id., quoting American Jurisprudence 2d (1972) 209, Section 79. In this case, therefore, the underlying issue of whether the disputed area is in appellants' chain of title is not only material, it is crucial.
 {¶ 24} As set forth above, appellants introduced evidence through Kalf's affidavit that the 17.29 acre parcel described in the Meeker-Shafer deed was essentially the same parcel in which appellants have an undivided one-half interest. Appellants also presented undisputed evidence that the Shafer-railroad agreement was in appellants' chain of title. In contrast, appellees relied on Simon's affidavit, in which he stated that, in his professional opinion, the disputed area was not part of appellants' parcel, and Haley's deposition, in which she testified that she could not determine, from the documents available for her inspection, whether or not Shafer owned land other than the 17.29 acre parcel at the time the Shafer-railroad agreement was made. The record also contains conflicting opinions as to the location of "the stake in the line of the Wheeling and Lake Erie Railroad Company's land," as evidenced by Kalf's and Simon's testimony.
 {¶ 25} This court has reviewed the entire record that was before the trial court and, upon consideration thereof and the law, finds that a genuine issue of fact remains as to whether or not the disputed area was ever included in the legal description of appellants' parcel. Accordingly, appellants' third assignment of error is well-taken.
 {¶ 26} In their first, second and fourth assignments of error, appellants assert that the trial court erred by finding that appellees owned the disputed area because issues of fact remain as to whether the railroad ever abandoned use of the disputed area, and whether appellees have a claim to the disputed area through adverse possession. Based on our determination as to appellants' third assignment of error, appellants' first, second and fourth assignments of error have become moot and are not well-taken.
 {¶ 27} Upon consideration whereof, we further find that, after construing the evidence on both appellees' motion for summary judgment and appellants' cross-motion for summary udgment most strongly in favor of the respective non-moving parties, neither party is entitled to judgment as a matter of law. The judgment of the Erie County Court of Common Pleas is hereby reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. Pursuant to App. R. 24, court costs of these proceedings are assessed to appellees.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Handwork, J., Knepper, J., Pietrykowski, J., concur.
[1] The parcel originally consisted of 17.29 acres. It was later reduced by 2.517 acres; however, it is undisputed that the loss of the 2.517 acres does not impact on the property at issue in this appeal.
[2] Although Norfolk Southern Corporation was named as a defendant in the trial court, it is not a party to this appeal.
[3] It is undisputed that that appellants' interest in the parcel is an undivided one-half interest, not complete ownership.
[4] The reference was actually "to a stake in the line of the Wheeling and Lake Erie Railroad Company's land," not "line."